UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
Panama City Division

| | |
|---|---|
| CELESTIAL, INC.<br><br>　　Plaintiff,<br><br>v.<br><br>DOES 1 – 377<br><br>　　Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No: 5:12-cv-375-RS-CJK<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF TOBIAS FIESER IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE

I, Tobias Fieser, declare:

1. I am Director of Data Services for IPP International UG ("IPP), a company incorporated in Germany under company number 115546. IPP is a provider of online anti-piracy services for the motion picture industry. I have been employed with IPP since January of 2007. IPP is a leading provider of online anti-piracy services for the motion picture industry. Before my employment with IPP, I held various software developer and consultant positions at companies where I specialized in filesharing technologies. I have approximately three (3) years of experience related to the protocols, technical architecture and operation of the Internet and filesharing technologies.

1

2. I submit this declaration in support of Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference. This declaration is based on my personal knowledge, and if called upon to do so, I would be prepared to testify as to its truth and accuracy.

3. At IPP, I am the head of the department that carries out evidence collection and provides litigation support services. I work closely with our research team to create credible processes to scan for, detect, and download copies of copyrighted material on multiple network protocols for use by copyright owners.

4. The Internet is a vast collection of interconnected computers and computer networks that communicate with each other. It allows hundreds of millions of people around the world to freely and easily exchange ideas and information, including academic research, literary works, financial data, music, audiovisual works, graphics, and an unending and ever-changing array of other data. Unfortunately, the Internet also has afforded opportunities for the wide-scale infringement of copyrighted motion pictures. Once a motion picture has been transformed into an unsecured digital format, it can be copied further and distributed an unlimited number of times over the Internet, without significant degradation in picture or sound quality.

5. To copy and distribute copyrighted motion pictures over the Internet, many individuals use online media distribution systems or so-called "peer-to-peer" ("P2P") networks. P2P networks, at least in their most common form, are computer systems that enable Internet users to (1) make files (including motion pictures) stored on each user's computer available for copying by other users or peers; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet.

investigated by our software must necessarily also be a source of download for that infringing file.

9. In order to have engaged in the unauthorized distribution and sharing of Plaintiff's copyrighted motion pictures each of the participating peers obtained a reference file for Plaintiff's copyrighted films from the video index of a BitTorrent website and loaded that reference file into a computer program designed to read such files. With the reference file loaded, the BitTorrent program employed the BitTorrent protocol to initiate simultaneous connections to hundreds of other peers possessing and sharing copies of the digital media – Plaintiff's copyrighted films– described in the reference file.

10. Once connected, the program began coordinating the copying of Plaintiff's copyrighted films among participating peer computers. As the films were copied to the peers' computers piece by piece, the downloaded pieces were immediately made available to other connected peers seeking to obtain the file.

11. This distributed nature of the P2P networks typically leads to a rapid viral spreading of a file throughout peer users. Because of the nature of a P2P network, any peer who has downloaded a part of the file prior to the time a subsequent peer downloads the same file is a possible source for the subsequent peer so long as that first peer is online at the time the subsequent peer downloads a file.

12. The search function of the P2P network was used to look for network users who were offering for distribution audiovisual files that were labeled with the names of Plaintiff's copyrighted motion picture. IPP then conducted a download of the respective content and careful and thorough review of that data. Unique hash values of these files were extracted from the original torrent-file as soon as the content had been verified as a valid copy of Plaintiff's

copyrighted motion pictures. IPP started searching for individuals making the content identified by these hash values available to the public. When a network user was located who was making that content available for distribution, IPP downloaded a part of that file(s) and stored other specific information in order to confirm that infringement was occurring and to identify the infringer by the unique Internet Protocol ("IP") address assigned to that Defendant by his/her ISP on the date and at the time of the Defendant's infringing activity.

13. All of the peers/infringers named as Doe Defendants were identified in the following way: Our software is connected to a number of files of illegal versions of the motion picture. All peers/infringers connected to those files were investigated through downloading a part of the file placed on their computer. This evidence was saved and could be shown to the court as evidence if necessary.

14. Once IPP's searching software program identifies an infringer in the way described herein for the motion pictures for which Plaintiff owns the exclusive licensing and distribution rights, we obtain the Internet Protocol ("IP") address of a user offering the file for download. In addition to the file of the motion picture itself, we download or otherwise collect publicly available information about the network user that is designed to help Plaintiff identify the infringer. Among other things, we download or record for each file downloaded: (a) the time and date at which the file or a part of the file was distributed by the user; (b) the IP address assigned to each user at the time of infringement; and, in some cases, (c) the video file's metadata (digital data about the file), such as title and file size, that is not part of the actual video content, but that is attached to the digital file and helps identify the content of the file. We then create evidence logs for each user and store all this information in a database.

outside Florida, to gain access to the Internet and distribute and make available for distribution and copying Plaintiff's copyrighted motion picture.

22. We downloaded the entire copyrighted motion pictures, and other identifying information described above, reviewed it and added such information to our monitoring system. Subsequently, we created evidence logs for a small part of the motion picture file for each Doe Defendant. Once ISP's are provided with the IP address, plus the date and time of the infringing activity, the Doe Defendant's ISPs quickly and easily can use their respective subscriber logs to identify the name and address of the ISP subscriber who was assigned that IP address at that date and time.

### Confirmation of Downloaded Material

23. I am also responsible for identifying on-line piracy of motion pictures for IPP, including gathering evidence of on-line piracy to support counsel's copyright protection enforcement efforts.

24. As part of my responsibilities at IPP, I have been designated to confirm that the digital audiovisual files downloaded by IPP are actual copies of Plaintiff's motion picture. It is possible for digital files to be mislabeled or corrupted; therefore, IPP (and accordingly, Plaintiff) does not rely solely on the labels and metadata attached to the files themselves to determine which motion picture is copied in the downloaded file, but also to confirm through a visual comparison between the downloaded file and the motion picture itself.

25. As to Plaintiff's copyrighted motion pictures, as identified in the Complaint, I or one of

19. Although users' IP addresses are not automatically displayed on the P2P networks, any user's IP address is readily identifiable from the packets of data being exchanged. The exact manner in which we determine a user's IP address varies by P2P network.

20. An infringer's IP address is significant because it becomes a unique identifier that, along with the date and time of infringement, specifically identifies a particular computer using the Internet. However, the IP address does not enable us to ascertain with certainty the exact physical location of the computer or to determine the infringer's identity. It only enables us to trace the infringer's access to the Internet to a particular ISP and, in some instances, to a general geographic area. Subscribing to and setting up an account with an ISP is the most common and legitimate way for someone to gain access to the Internet. An ISP can be a telecommunications service provider such as Verizon, an Internet service provider such as America Online, a cable Internet service provider such as Comcast, or even an entity such as a university that is large enough to establish its own network and link directly to the Internet.

21. Here, the IP addresses IPP identified for Plaintiff enable us to determine which ISP was used by each infringer to gain access to the Internet. Publicly available databases located on the Internet list the IP address ranges assigned to various ISPs. However, some ISPs lease or otherwise allocate certain of their IP addresses to other unrelated, intermediary ISPs. Since these ISPs consequently have no direct relationship -- customer, contractual, or otherwise -- with the end-user, they are unable to identify the Doe Defendants through reference to their user logs. The intermediary ISPs' own user logs, however, should permit identification of the Doe Defendants. We determined that the Doe Defendants here were using those ISPs listed in **Exhibit A to Plaintiff's Complaint** together with various other ISPs operating both within and

outside Florida, to gain access to the Internet and distribute and make available for distribution and copying Plaintiff's copyrighted motion picture.

22. We downloaded the entire copyrighted motion pictures, and other identifying information described above, reviewed it and added such information to our monitoring system. Subsequently, we created evidence logs for a small part of the motion picture file for each Doe Defendant. Once ISP's are provided with the IP address, plus the date and time of the infringing activity, the Doe Defendant's ISPs quickly and easily can use their respective subscriber logs to identify the name and address of the ISP subscriber who was assigned that IP address at that date and time.

### Confirmation of Downloaded Material

23. I am also responsible for identifying on-line piracy of motion pictures for IPP, including gathering evidence of on-line piracy to support counsel's copyright protection enforcement efforts.

24. As part of my responsibilities at IPP, I have been designated to confirm that the digital audiovisual files downloaded by IPP are actual copies of Plaintiff's motion picture. It is possible for digital files to be mislabeled or corrupted; therefore, IPP (and accordingly, Plaintiff) does not rely solely on the labels and metadata attached to the files themselves to determine which motion picture is copied in the downloaded file, but also to confirm through a visual comparison between the downloaded file and the motion picture itself.

25. As to Plaintiff's copyrighted motion pictures, as identified in the Complaint, I or one of my assistants have watched a DVD (or VHS) copy of the motion pictures provided by Plaintiff. After IPP identified the Doe Defendants and downloaded the motion pictures they were

distributing, we opened the downloaded files, watched them and confirmed that they contain a substantial portion of the motion pictures identified in the Complaint.

26. Plaintiff's motion pictures continues to be made available for unlawful transfer and distribution using P2P protocols, in violation of Plaintiff's exclusive licensing and distribution rights, and rights in the copyright. IPP continues to monitor such unlawful distribution and transfer of Plaintiff's Motion Picture and to identify infringers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 14th, March 2013, at Stutensee – Friedrichtal.

Tobias Fieser